## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **JANE DOE,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | **CIVIL ACTION NO. _____** |
| **vs.** | § | |
| | § | **JURY DEMANDED** |
| **THE KELLER INDEPENDENT** | § | |
| **SCHOOL DISTRICT,** | § | |
| | § | |
| *Defendant.* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

### NATURE OF THE ACTION

1.      Plaintiff Jane Doe brings this suit pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. Sections 1681 to 1688, to obtain relief for sexual harassment and violation of equal protection rights that occurred at Timber Creek High School, a public school in the Keller Independent School District in Fort Worth, Texas.

2.      While Plaintiff was still a student at Timber Creek High School, Ricky Badley—an employee of Defendant Keller Independent School District (referred to herein as "Keller ISD" or "KISD") and now convicted sex offender—subjected Plaintiff to unwanted sexual advances, sexual harassment, stalking, and other threatening behaviors.  It was a campaign of extreme harassment and intimidation that terrorized Plaintiff for over one year and stripped her innocence away.

3.      This never should have occurred.  Defendant Keller ISD could have—and should have—prevented Badley's terrorizing of Plaintiff if it had taken reasonable steps to train and educate its employees and students on its policies and procedures pursuant to Title IX.  Further, Defendant Keller ISD's failure to institute proper protocols, and failure to educate or inform its

PLAINTIFF'S ORIGINAL COMPLAINT                                                                                          Page 1 of 23

employees and students, resulted in prior instances of Badley's misconduct going unreported or prior complaints being mishandled.

## PARTIES

4.      Plaintiff Jane Doe is a female individual who currently resides in Tarrant County, Texas.  At all times relevant to this suit, Plaintiff was a minor and a student attending Timber Creek High School, a public school within the Keller Independent School District, was a citizen of the United States, and was a person entitled to the protection of the Education Amendments of 1972 and the Civil Rights Restoration Act of 1987.

5.      Defendant Keller Independent School District is a public entity organized and existing under the laws of the State of Texas and at all times relevant to this suit, was, and is, a recipient of federal funding within the meaning of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et. seq*.  Defendant Keller ISD may be served with process by serving its superintendent Dr. Rick Westfall at 350 Keller Parkway, Keller, Texas 76248.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the subject matter of this action pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 – 1688.  This Court also has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, which gives district courts original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

7.      Venue is proper in this judicial district pursuant to the provisions of 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this judicial district and since Defendant Keller ISD resides in this district.

## TITLE IX AND THE FOURTEENTH AMENDMENT
## PROTECT STUDENTS LIKE PLAINTIFF

8.     Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a), states that: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefit of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."

9.     In *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60 (1992), the United States Supreme Court acknowledged that an educational institution receiving federal funds intentionally violates Title IX and engages in sex discrimination when it knowingly fails to take reasonable steps within its power to prevent the sexual harassment or abuse of a student that is so severe that it creates a hostile and harmful atmosphere for that student.

10.     In *Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1988), the United States Supreme Court recognized that a recipient of federal educational funds intentionally violates Title IX, and is subject to a private damages action, where the recipient is "deliberately indifferent" to known acts of discrimination.

11.     The Supreme Court held that Title IX does not displace § 1983 claims against school officials because it was not intended to be the exclusive remedy for addressing gender discrimination in schools. *See Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257–58 (2009). Violating a student's right to be free from school employees' sexual touching and verbal abuse gives rise to a Section 1983 claim for violating the Fourteenth Amendment right to freedom from violations of bodily integrity and personal security. *See, e.g., Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443 (5th Cir. 1994). Further, a state actor's sexual harassment and disparate treatment of a person based on sex can constitute a violation of the Equal Protection Clause. *See, e.g., Hayden ex rel. A.H. v. Greensburg Cmty. Sch. Corp.*, 743 F.3d 569, 579 (7th Cir. 2014); *Murrell v. Sch. Dist.*

*No. 1, Denver, Colo*., 186 F.3d 1238, 1249 (10th Cir. 1999); *Wright v. Rolette Cty*., 417 F.3d 879,

884 (8th Cir. 2005); *Hickman v. Laskodi*, 45 F. App'x 451, 453 (6th Cir. 2002).

12.     Title IX is implemented through the Code of Federal Regulations. *See* 34 C.F.R.

Part 106, which provides:  "A recipient shall adopt and publish grievance procedures that provide

for the prompt and equitable resolution of student and employee complaints alleging any action

which would be prohibited by this part." 34 C.F.R. § 106.8(c).

13.     Defendant Keller ISD is an educational institution that, at all relevant times,

received federal funding for its academic programs and activities and was subject to the

requirements of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a).

14.     Ultimately, as illustrated below, the circumstances giving rise to the claims of this

Plaintiff, and others, demonstrate a history of sexual harassment, discrimination, and abuse

perpetrated against female students resulting from Defendant Keller ISD's deliberate indifference

in allowing it to continue.

## FACTUAL BACKGROUND

**A.      Keller ISD teacher Ricky Badley sexually harassed and stalked Plaintiff for over one year.**

15.     Plaintiff was a student at Timber Creek High School ("Timber Creek") from the

Fall of 2017 to the Spring of 2021.  During the 2019-2020 school year, Plaintiff was only 16 years

old.

16.     Timber Creek permitted its faculty and staff members to send text messages to

students using school approved means.  Badley—a faculty member at Timber Creek—took

advantage and used this ability to text students to advance his predatory behavior.  Beginning in

early 2019, Badley started sending individual text messages from his personal cell phone directly

to Plaintiff.

17.     In May 2019, Plaintiff and Badley both attended the end of year banquet for the school's track team, which was an official school event.  At that time, it became evident that Badley was grooming[1] Plaintiff by telling her that she was his "new favorite" since his "last one" graduated.

18.     "Grooming" is a tactic often used in the sexual abuse of children and is "designed to reduce resistance to sexual advances." *United States v. Hitt*, 473 F.3d 146, 152 (5th Cir. 2006). "Grooming refers to deliberate actions taken by a defendant to expose a child to sexual material; the ultimate goal of grooming is the formation of an emotional connection with the child and a reduction of the child's inhibitions in order to prepare the child for sexual activity." *United States v. Howard*, 766 F.3d 414 (5th Cir. 2014) (citing *United States v. Chambers*, 642 F.3d 588, 593 (7th Cir. 2011)). Through the "grooming" process, perpetrators build relationships with, manipulate, and use a child so that the child is reluctant to report the abuse. *See Helm v. Davis*, No. 4:18-CV-088-O, 2019 WL 974668, at *13 (N.D. Tex. Feb. 28, 2019).

19.     The American Bar Association explains that sex offenders often groom a child by "building trust with a child and the adults around a child in an effort to gain access to and time alone with her/him."[2]  Grooming a child enables the perpetrator:

- "to manipulate the perceptions of other adults around the child[;]

- to manipulate the child into becoming a co-operating participant which reduces the likelihood of a disclosure and increases the likelihood that the child will repeatedly return to the offender[;]

- to reduce the likelihood of the child being believed if they do disclose[;] [and]

---

[1] "Grooming" is defined as befriending and establishing an emotional connection with a child to lower the child's inhibitions with the objective of sexual abuse.

[2] AMERICAN BAR ASSN., *Understanding Sexual Grooming in Child Abuse Cases*, *available at* https://www.americanbar.org/groups/public_interest/child_law/resources/child_law_practiceonline/child_law_practice/vol-34/november-2015/understanding-sexual-grooming-in-child-abuse-cases/ (Nov. 1, 2015) (last visited Apr. 15, 2021) (citing U.S. Department of Justice, Office of Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking (SMART)).

- to reduce the likelihood of the abuse being detected."[3]

While a predator may threaten violence, "[m]ore common . . . are subtle approaches" in which "[t]he offender may assume a caring role, befriend the child or even exploit their position of trust and authority to groom the child and/or the child's family."[4]  To do so, they may "seek out a child who is less supervised by adults in her/his life.  This increases the likelihood that the offender's time with the child is welcomed and encouraged."[5]  "Common sexual grooming behaviors are often subtle and may not appear inappropriate" and include:

- An adult seems overly interested in a child.

- An adult frequently initiates or creates opportunities to be alone with a child (or multiple children).

- An adult becomes fixated on a child.

- An adult gives special privileges to a child (e.g., rides to and from practices, etc.).

- An adult befriends a family and shows more interest in building a relationship with the child than with the adults.

- An adult displays favoritism towards one child within a family.

- An adult finds opportunities to buy a child gifts.

- An adult caters to the interests of the child, so a child or the parent may initiate contact with the offender.

- An adult displays age and gender preferences.[6]

Badley employed nearly every one of these tactics on Plaintiff and other minor female students at Keller ISD.

---

[3] *Id.* (citing Canadian Centre for Child Protection Inc. Child Sexual Abuse: It is Your Business, 2014).
[4] *Id.*
[5] *Id.*
[6] *Id.*

20.     In July 2019, Plaintiff competed in a private club-sponsored pole vault competition in College Station, Texas.  Despite neither being a pole vault coach for Plaintiff or Timber Creek, nor being invited to attend by Plaintiff or her family, Badley traveled over 160 miles to watch Plaintiff at the competition. Badley secretly observed Plaintiff at the competition for hours without making his presence known.

21.     When Plaintiff began her junior year at Timber Creek in August 2019, Badley invited Plaintiff to use his classroom during her free periods in order to study, finish homework, or relax.  He even stocked a drawer full of Plaintiff's favorite snacks in order to entice her to visit his classroom.  Plaintiff—who interpreted Badley's offer as a kind gesture—began to use the classroom.  Soon after Plaintiff began using the classroom, Badley started referring to Plaintiff as his "little girl."

22.     In September 2019, Plaintiff began talking to N.H., a male student who attended Timber Creek.  When Badley learned of Plaintiff's romantic interest in N.H., he told her that she was not allowed to talk to boys.  Later that month, Plaintiff attended Timber Creek's Homecoming dance with N.H., and after the dance, the two visited a Whataburger restaurant.  The next school day, Badley, who was stalking Plaintiff, mentioned that he saw her at the Whataburger with N.H., and he repeated again to Plaintiff that she was not allowed to have a boyfriend until he approved.

23.     In October 2019, Badley attempted to increase his contact with Plaintiff by following her on various social media platforms.  Badley also texted Plaintiff, demanding to meet N.H. in order to "interrogate" him so Badley could give his approval.  Uncomfortable with Badley's inappropriate demand, Plaintiff refused to introduce N.H. to Badley.

24.     In response to Plaintiff's refusal to make an introduction, Badley continued to gaslight Plaintiff, telling her she was no longer welcome in his classroom because of a lack of trust, implying that any reason for mistrust was Plaintiff's fault.

25.     Badley then texted Plaintiff, admitting he "crossed the line."  Yet, he then had her go into a classroom alone with him and told her she could not leave until she forgave him.

26.     In all, Badley sent over 600 text messages to Plaintiff.  Yet it was during the timeframe of November and December 2019 when the number of text messages Badley sent dramatically increased.   Moreover, the contents of the text messages were increasingly inappropriate, considering their teacher-student relationship.  Badley knew this.  For example, Badley repeatedly texted Plaintiff that he loved her and told her "you are definitely one of the special people in my life" despite the fact he "realize[d] me saying I love ya little girl seems to make you uncomfortable as well because you never respond back love you too or love you old man anymore."  Badley also acknowledged how he "noticed how you don't feel comfortable giving me the daily hug we always had" but also expressed that "if and when you want to give me a hug I WILL ALWAYS ACCEPT IT!"  These are textbook examples of grooming.

27.     Beginning in mid-December 2019, Badley's actions ramped up from inappropriate to outright terrifying when he began a campaign of harassment by anonymously sending disparaging letters to Plaintiff and her family and friends containing fabricated, graphic, and sexually explicit information and details about Plaintiff.  Badley sent no less 28 different sets of letters between December 2019 and April 3, 2020.  Some letters were drafted in a way to make it appear like there was a "group" watching and stalking Plaintiff and were written like ransom letters seen in movies where individual letters were cut and pasted onto the page to write a message.  It

later was revealed that Badley utilized Defendant Keller ISD's resources in order to make several of these letters.

28.     Many of these letters included graphic descriptions of unfounded sexual encounters between Plaintiff and N.H.  For example, the second letter Badley sent out stated that "[N.H.] popped [Plaintiff's] cherry in the backseat of his truck"; "[Plaintiff is] good at giving BJ's in that backseat as well"; "[N.H.] fingered [Plaintiff's] pussy and she liked it"; "[N.H.] called [Plaintiff] his fuck toy"; and referred to Plaintiff as a "slut in training." Plaintiff's parents informed Keller ISD of these letters on December 19, 2019.  While Keller ISD spoke to Badley at that time, it took no action to restrict Badley's ability to contact or otherwise interact with Plaintiff.

29.     Plaintiff's parents filed a police report on December 23, 2019, with the Fort Worth Police Department. Badley texted Plaintiff's mother on December 26, 2019, stating that he filed his own police report.  The Fort Worth Police Department confirmed this was a lie because no such report was filed, leading to further suspicion falling on Badley.  Federal postal inspectors began investigating as well.

30.     The investigation discovered several irregularities with Badley's account of the events.  Badley was also observed driving past Plaintiff's home late and seen arriving to other locations Plaintiff was present only to speed away if noticed.  The investigation further revealed that the author was likely a staff member of Keller ISD because of certain phrases used in the letters.

31.     On January 8, 2020, Timber Creek's school administrator stated it appeared to be a faculty member that wrote the letters, as only staff members knew of a fact included in the letters—that one of the faculty members was newly divorced.  The school administrator also expressed

PLAINTIFF'S ORIGINAL COMPLAINT                                              Page 9 of 23

concern that Badley had not informed the school of any letters he had personally claimed to Plaintiff's family that he had received.

32.     Despite the school believing it was a faculty member that wrote the letters to Plaintiff, the school failed to question the faculty, failed to issue any restrictions or warnings, failed to conduct an investigation, failed to institute any policies to shut down the behavior, and failed to impose any contact restrictions on Badley after he returned to school on January 13, 2020. During that time, he admitted to a student response officer that Plaintiff was "his favorite" on January 8, 2020. Yet, Keller ISD failed to instruct Badley to have no contact with Plaintiff because just three days later Badley again showed up at a track meet in Joshua, Texas. Plaintiff's parents informed Keller ISD of Badley's presence at the track meet. But again, Keller ISD did nothing to prevent Badley from contacting Plaintiff as he continued to engage with her daily during Plaintiff's track practice.

33.     During a meeting between Plaintiff's parents and Keller ISD in January 2020, Keller ISD's Human Resources Department confirmed that Badley's behavior violated Keller ISD's code of ethics, due to excessive number of texts and nature of texts, and that the time of day the texts were sent were "unreasonable" for faculty and student communication. Further, Defendant referred to Badley's behavior as "grooming."

34.     On January 27, 2020, Defendant inexplicably offered Badley the *option* of either resignation or termination. Badley chose to resign. Badley's terrorizing of Plaintiff, however, did not end. In fact, before the end of the month, Badley drove by Plaintiff's family's home again.

35.     The letters and misconduct continued. In February 2020, another letter stated: "On Christmas night, she went to [N.H.'s] house. After his parents went to bed, they went to his room. They celebrated Jesus' birthday by him fucking her brains out! He had to stuff her panties in her

mouth because she was getting to [sic] loud. Had to muffle the slut!" The letter concluded: "What's next? Double teamed? Black cock? Gang bang? Spit roast? Pregnancy? A slut like [Plaintiff] probably wants it all! What a hoe!"

36.     Some letters made outrageous and inappropriate demands of Plaintiff and threatened consequences if not followed.  One such letter on February 3, 2020 threatened that additional false and disparaging information about Plaintiff would be released if she did not create and post two videos on Tik Tok with sexual undertones by a required deadline.  The letter demanded Plaintiff to make a first video "showing her eat a whole banana" and a second video to "show her Twerking (show us your booty shake) for AT LEAST 10 seconds."  Despite informing Keller ISD of the Tik Tok video, Defendant took no action.

37.     Other letters stated graphic and sexually explicit statements, including:

    a.  "Your parents must be so proud to have such a big slut as a daughter";

    b.  "You are a slut, a bitch and a sinner";

    c.  "You still look sexy and slutty though when you wear those tights/leggings or those short mini's";

    d.  "[Doe] had a bad meet on Saturday because she was too tired/sore from getting Raw Dogged by a couple of guys Friday after school. Slut got used! If having sex for money makes you a prostitute. Does having sex for free make you a non-profit whoreganization?"; and

    e.  "We love when you do the braided pig tails. Gives a guy something to hold on to when you are sucking or when he's fucking you from behind/ Perfect slutty look for you! Keep that look. It suits you well. Need to start lifting/working out and less time being a slutty."

38.     On February 12, 2020, at least eighteen of Plaintiff's friends and their parents received letters.  These letters were sent to addresses in Keller ISD registration records, indicating that Badley was still using school resources.

39.     Plaintiff's parents received a letter that was drafted as coming anonymously from a fellow Timber Creek student's mother.  The "mother" in the letter alleged that she found "weed and pills" in her daughter's room and her daughter confessed that she got them from Plaintiff.  It went as far as to allege that Plaintiff was performing sexual acts in order to obtain drugs.  "Giving your body away from [sic] drugs is heartbreaking and she says it's rather common when a girl doesn't have the money."

40.     Badley even mailed threatening letters to himself to put himself in the middle of the situation and make himself a "victim" while also attempting to disguise that he was the actual author of these letters.  However, suspicion soon began to fall on Badley despite this ludicrous attempt to direct the investigation away from himself.

41.     On or about February 17, 2020, Badley was observed placing mail in a U.S. mail collection box in Fort Worth, Texas.  The postal inspectors confiscated the letters for processing; upon opening them, the inspectors found 13 letters similar to those previously sent.  The U.S. Postal Inspection Service also discovered that the postage used for those letters was purchased with a credit card belonging to Badley at a self-service kiosk at an U.S. Postal Service office. Further, Badley matched the photograph taken at the kiosk of the individual purchasing the postage affixed to the harassing letters.  On March 3, 2020, Badley was observed entering a Walmart parking lot where there is a mail collection box, and postal inspectors ultimately intercepted another seven of Badley's letters.

42.     In September 2020, Badley was indicted.   On October 19, 2020, Badley entered a plea of guilty to one count of stalking, and a second count of possession of child pornography.

43.     The ensuing investigation by the U.S. Postal Inspection Service into Badley had uncovered pornographic images of a toddler stored on his laptop.   While separate from the harassment and stalking of Plaintiff, Badley admitted in Court documents he knew the images on his laptop depicted actual minors engaged in sexually explicit conduct.

**B.      Badley's sexual harassment and manipulative grooming created a hostile learning environment that breached Title IX's guarantee of equal access to educational benefits to Plaintiff.**

44.     Badley created a culture where it was clear that female students who accepted his intimate advances and harassment were subject to additional attention.   Plaintiff was treated well when she did not resist his harassment.   When she took steps to avoid it or challenged him in any way, however, she was subject to hateful behavior, harassment, and stalking.

45.     Badley's harassment of Plaintiff was so severe, pervasive, and objectively offensive that it undermined and detracted from Plaintiff's educational experience.   In so doing, Badley effectively denied Plaintiff equal access to the resources and opportunities available to other students at Keller ISD.

**C.      Defendant Keller ISD knew of misconduct and could have—and should have— prevented plaintiff's victimization by Badley.**

46.     Plaintiff's ordeal was preventable. Defendant Keller ISD failed to take reasonable steps that would have stopped Badley in the first place.

47.     In the years prior to Badley's sexual harassment of Plaintiff, other female students reported to a school principal that Badley's behavior crossed lines and made them feel uncomfortable.   This is supported by Badley's characterization of Plaintiff as "his *new* favorite."

Simply put, the Timber Creek administration and Defendant Keller ISD were aware of concerns regarding Badley's behavior, yet did nothing to monitor or supervise him.

48.     Defendant Keller ISD failed to properly investigate previous claims, and frankly did not care whether Badley was making students feel uncomfortable.

49.     Had Keller ISD trained their employees on its Title IX policies and procedures, the information provided by Badley's former victims would have been investigated, and Badley would have been terminated and never would have come into contact with Plaintiff.

50.     Even in this case, after district officials became aware of his actions, Keller ISD did not immediately terminate Badley.  It did not immediately suspend him, or notify all faculty, students, and their families.  Rather, it only asked him to resign.  This is critical on several fronts.

51.     Mostly critically, by failing to take any immediate action to protect Plaintiff, Keller ISD subjected Plaintiff to weeks of additional harassment by Badley and the trauma that resulted from that harassment.  Keller ISD's failure to even issue a "no contact" directive to Badley assured that he would continue to feed his obsession with Plaintiff by engaging with her during her track practices and even showing up at another one of Plaintiff's track meets.

52.     By deciding to request that Badley resign (instead of firing him), Keller ISD certainly knew that this would allow him to save face and would only help his future employment. If future schools or other employers were to look at Badley's record at Keller ISD, it would not show that he was fired.  Had the government not conducted a thorough investigation, and had Badley not been sentenced to federal prison, this decision by Keller ISD would have facilitated Badley's ability to work and have contact with future students.

53.     Keller ISD made this decision despite Badley clearly violating Keller ISD's own policy on anti-harassment, in which Keller ISD states:

KISD prohibits bullying and harassment.

A safe and civil environment is needed for students to learn and attain high academic standards and to promote healthy human relationships. The District believes bullying, harassment based on a protected class (such as sexual harassment), discrimination, intimidation, violence, and other similar disruptive behavior are detrimental to the establishment of a safe and civil learning environment.

54.     Keller ISD also likely did so to serve its own interests (*e.g.*, Keller ISD likely wanted to protect itself from any potential complaint by Badley that he was wrongfully terminated).  Again, this shows a disregard for the safety of others, as Keller ISD's own interests took priority.

55.     In its further investigation into Badley, the authorities found child pornography on Badley's laptop, including graphic images of a toddler.  Badley admitted he knew the images depicted actual minors engaged in sexually explicit conduct.

56.     U.S. District Judge Reed O'Connor sentenced Badley to five years on the stalking charge, and 71 months on the child pornography charge.  Badley is serving these sentences consecutively in a federal prison—a total of more than 10 years.

**D.     By allowing Badley to continue unsupervised, Keller ISD enabled the sexual grooming and harassment that traumatized Plaintiff—consequences that Keller ISD could have readily prevented.**

57.     Keller ISD could have taken any of the following actions upon learning of allegations that Badley was inappropriate with his students:

- Monitor Badley's behavior and classes;

- Question students about reported experiences with Badley, including inappropriate communications, verbal abuse, and sex-based discrimination;

- Supervise or check in on Badley routinely;

- Limit Badley's unsupervised access to certain areas of the school;

- Limit Badley's access to students, particularly without supervision; or

- Inform parents and students about precautions they could take to help identify inappropriate conduct and how to report it.

Instead, Keller ISD did absolutely nothing beyond eventually allowing Badley to resign.

**E.      Defendant Keller ISD's policies for reporting Title IX violations.**

58.      Keller ISD purports to have policies and procedures concerning Title IX.

59.      Yet, the only public location where Keller ISD's Title IX policy can be found is a single webpage within Keller ISD's official website.[7]  The webpage outlining KISD's Title IX policy did not exist until September 2020.[8]

60.      The webpage contains a link to all training materials for Title IX personnel.  A true and correct copy of Keller ISD's Title IX policy and training materials ("Keller ISD's Title IX Policy") is attached hereto as Exhibit A.

61.      Keller's ISD's Title IX Policy expressly states that Keller ISD has knowledge when any employee knows or believes sexual harassment may have occurred.  It further states an employee must notify the Title IX coordinator of potential sexual harassment immediately.

62.      Prior to 2020, Keller ISD employees and students received no training, or wholly inadequate training, on Keller ISD's Title IX Policy.  It is this lack of training that facilitated Ricky Badley's campaign of stalking and sexual harassment against multiple female students, including Plaintiff.

**F.      Through his sexual harassment of Plaintiff, Badley and Keller ISD deprived Plainitff of educational opportunities and caused her extensive emotional trauma.**

---

[7] https://www.kellerisd.net/Page/6803.
[8] https://web.archive.org/web/20200601000000*/https://www.kellerisd.net/Page/6803.

63.     After Badley's treatment of Plaintiff, she decided not to return to school for five days and also had to leave school early on a number of occasions due to panic attacks.  At the start of the 2020-2021 school year, Plaintiff felt compelled to attend school mostly virtually because she had difficulty leaving her house due to the trauma that resulted from Badley's harassment. Plaintiff has suffered severe with mental health struggles, due in large part to the toxic environment and harassing and abusive dynamic Badley constructed.

64.     In sum, Badley employed tactics of manipulation, abuse, inappropriate communications and commentary, and improper teacher-student relationships to groom Plaintiff and attempt to initiate a sexual relationship with her. In so doing, Badley deprived Plaintiff of educational opportunities and subjected her to sexual harassment and contact.

65.     Tragically, Plaintiff has endured severe mental anguish and other injuries as a result of Badley's unfettered harassment—which was made possible by Defendant Keller ISD's policy of turning a blind eye to Badley's behavior.  Defendant Keller ISD's willful ignorance in the face of Badley's reported problems subject it to liability for Plaintiff's injuries suffered as a student of Badley and of Keller ISD.

**CAUSES OF ACTION:**
**DISCRIMINATION UNDER TITLE IX: SEXUALLY HOSTILE**
**CULTURE AND DELIBERATE INDIFFERENCE**
**(VIOLATION OF TITLE IX OF THE EDUCATION**
**AMENDMENTS OF 1972, 20 U.S.C. § 1681(A)), NEGLIGENCE, NEGLIGENT HIRING**

66.     Plaintiff incorporates all the aforementioned allegations, as if incorporated below.

67.     Badley's sexually related communications and harassment of minor Plaintiff were not welcome and constitute sexual harassment under Title IX.

68.     Plaintiff and other complainants who reported Badley's misconduct told an "appropriate person" about it.  This includes, but is not limited to, an assistant principal, a principal,

human resources personnel, and school administrators.  Each of these individuals had authority to take corrective action.

69.     Defendant Keller ISD was deliberately indifferent to sexual harassment by mis-administering or failing to train its employees on the policies cited herein, including without limitation:

- Violating its own policies set forth under Title IX;

- Any policy investigating complaints made about faculty and staff members;

- Any policy investigating the prior criminal background of faculty and staff members; and

- Any policy educating students on how to report instances of sexual harassment.

70.     Furthermore, Keller ISD failed to institute, promulgate, and enforce proper policies, to allow and encourage the reporting of, and investigation into, any complaints of inappropriate behavior by its faculty teachers and coaches.

71.     Defendant Keller ISD's failure to create safe policies and practices, or failure to train its employees on the policies, was the proximate cause of Plaintiff being subjected to a year-long campaign of sexual harassment in the form of a hostile educational environment.

72.     Defendant Keller ISD failed to conduct a thorough background examination of Badley before hiring him to work at Keller ISD, failing to learn that Badley had been asked to "resign with no eligibility of rehire" from a least one other school district.

73.     Defendant Keller ISD's deliberate indifference to Badley's ongoing sexual harassment exposed Plaintiff to continued sexual harassment—which was so severe, pervasive, and objectively offensive that it effectively barred her access to meaningful educational

opportunities and benefits including academics and on-campus events and activities available to male students.

74.    The mental pain and anguish that Plaintiff suffered was so severe and pervasive that it negatively affected her health and quality of life, as well as her educational opportunities and benefits.

75.    As a direct and proximate result of KISD's creation of and deliberate indifference to its sexually hostile educational environment, Plaintiff suffered damages and injuries for which Keller ISD is liable.

## DISCRIMINATION IN VIOLATION OF THE FOURTEENTH AMENDMENT EQUAL PROTECTION CLAUSE UNDER SECTION 1983 (U.S. CONST., AMEND. XIV; 42 U.S.C. § 1983)

66.    Plaintiff incorporates all the aforementioned allegations, as if incorporated below.

67.    The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution gives Plaintiff the right to be free from invidious discrimination in classifications and other governmental activity.

68.    Defendant had a duty to give male and female students equivalent levels of protection.

69.    Badley was an employee of Defendant.  As set forth above, the grooming behavior was directed exclusively toward female students.  In doing so, Defendant and Badley created a pervasively hostile environment toward female students.

70.    Defendant had a custom, policy, and/or practice of entirely ignoring Badley's actions, allowing him full control over his students, without supervision.

71.    By singling out female students such as Plaintiff for disparate treatment and by engaging in the misconduct described herein, Badley, in his capacity for Defendant, carried out a policy that discriminated against female students.

## DAMAGES

72.     Defendant Keller ISD's inexcusable actions led to Plaintiff's happiness and innocence being taken away.  Plaintiff constantly worries and has had suicidal thoughts as a result of the harassment she endured.

73.     Plaintiff brings this action to hold Keller ISD accountable and to ensure Keller ISD prioritizes and values its students' safety.

74.     Plaintiff seeks compensation for the following damages that resulted from this incident:

> a.     Past mental anguish of Plaintiff, and that she will, in all probability, suffer in the future;
>
> b.     Medical expenses that Plaintiff has incurred in the past and will, in all probability continue to incur in the future;
>
> c.     Actual damages;
>
> d.     Compensatory damages;
>
> e.     Nominal damages;
>
> f.     Punitive damages;
>
> g.     Attorney's fees;
>
> h.     Cost of suit;
>
> i.     Statutory damages;
>
> j.     Pre- and post-judgment interest; and
>
> k.     Any and all other damages to which Plaintiff may be justly entitled.

## **ATTORNEY'S FEES**

75.     As a result of this action, Plaintiff has retained Michelle Simpson Tuegel and Andrew Dao and their respective firms to represent her in her claims against Keller ISD. Accordingly, Plaintiff seeks attorneys' fees incurred pursuant to Title IX.

## **PRESERVATION OF EVIDENCE**

76.     Plaintiff hereby requests and demands that Defendant Keller ISD preserve and maintain all evidence pertaining to any claim or defense related to the incident made the basis of this lawsuit, or the damages resulting therefrom, including photographs; videotapes, audiotapes; recordings; business records; correspondence; complaints; memoranda; files; facsimiles; emails; voice mails; text messages; investigations; cellular telephone records; calendar entries; and any electronic image, data, or information related to Plaintiff or Badley that references the conduct described herein, the damages resulting therefrom, any other misconduct, or that otherwise relates to the claims made in this lawsuit.  Failure to maintain such items will constitute spoliation of the evidence.

## **DEMAND FOR JURY TRIAL**

77.     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury.

## **RELIEF REQUESTED**

78.     For the foregoing reasons, Plaintiff respectfully requests that the Court enter judgment against Defendant consistent with the relief requested herein, and for any and all other relief to which Plaintiff may be justly entitled including actual damages, compensatory damages, court costs, attorneys' fees, and pre- and post-judgment interest.

79.     Plaintiff respectfully requests this Court:

a.     Enter judgment against Defendant for the damages Plaintiff has suffered, in amount to be determined at trial, as well as punitive damages against Defendant;

b.     Award pre-judgment and post-judgment interest;

c.     Award expenses of litigation, including reasonable attorney's fees; and

d.     Award such other and further relief as this Court deems just and proper.

80.    Plaintiff seeks damages in an amount over $1,000,000.

81.    Plaintiff prays that Defendant Keller ISD be cited in terms of law to appear and answer herein, that upon final trial and hearing hereof, that Plaintiff recovers damages from Defendant Keller ISD in accordance with the evidence, and for such other further relief, both general and special, both in law and in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

*/s/ Michelle Simpson Tuegel*
THE SIMPSON TUEGEL LAW FIRM, PLLC
**MICHELLE SIMPSON TUEGEL**
Texas Bar No. 24075187
**TERAH MOXLEY**
Texas Bar No. 24074768
3301 Elm St.
Dallas, Texas 75226
(214) 774-9121
(214) 614-9218 (fax)
michelle@stfirm.com
terah@stfirm.com

**DALY & BLACK, P.C.**

*/s/ Andrew Dao*
Andrew Dao
Texas Bar No. 24082895 * *pro hac forthcoming*
Ajay Ketkar
Texas Bar No. 24102801 * *pro hac forthcoming*
2211 Norfolk St., Ste. 800
Houston, Texas 77098
(713) 655-1405

(713) 655-1587 (fax)
adao@dalyblack.com
aketkar@dalyblack.com
ecfs@dalyblack.com (service)