IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JANE DOE, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | CIVIL ACTION NO. |
| v. | § | |
| | § | 4:21-cv-01094-O |
| THE KELLER INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | JURY DEMANDED |
| | § | |
| *Defendant.* | § | |
| | § | |

**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR RECONSIDERATION, MOTION FOR NEW TRIAL, AND MOTION TO ALTER/AMEND JUDGMENT**

Plaintiff files this Reply to Defendant's Response to Plaintiff's Motion for Reconsideration, Motion for New Trial, and Motion to Alter/Amend Judgment, and would respectfully show this Court the following:[1]

**ARGUMENT**

**A. Plaintiff's Motion is timely.**

Plaintiff served Defendant with Plaintiff's Motion to August 4, 2022. Defendant acknowledges this in a footnote in its Response, confirming that Defendant received Plaintiff's Motion on August 4, 2022.

The e-filing system did not allow Plaintiff to file the Motion on August 4, 2022. *See* Exhibit A, Affidavit of Ingrid Abrego. The next morning, on August 5, 2022, Plaintiff's counsel's office contacted the Court. *Id.* The Court's clerk informed Ingrid Abrego, a paralegal on

---

[1] Plaintiff incorporates all arguments and exhibits contained within Plaintiff's Motion for Reconsideration, Motion for New Trial, and Motion to Alter/Amend Judgment. *See* Dkt. 44.

Plaintiff's legal team, that the Court had the case "locked" and so no filing could be filed into it. *Id.* Thus, two things are undisputed. Defendant received Plaintiff's Motion on August 4, and Plaintiff attempted to file the Motion on August 4. This is akin to a situation in which a filing is rejected because of an error (e.g. the PDF is not properly combined, etc.), and is re-submitted.

### B. **No conference was required for the relief sought in Plaintiff's Motion.**

Defendant's counsel acknowledges that no conference is required for a motion for new trial yet gripes about Plaintiff not conferring with Defendant's counsel regarding said Motion. The relief sought in Plaintiff's combined Motion for Reconsideration, Motion for New Trial, and Motion to Amend/Alter Judgment are the same: Plaintiff is requesting that this Court reconsider its ruling and vacate and/or amend the Order Granting Defendant's Motion to Dismiss. Thus, Plaintiff did not confer with Defendant as Defendant would certainly be against the relief sought.

### C. **Plaintiff's First Amended Complaint raises sufficient allegations to state a claim for a plausible right to relief.**

> [1] The District recognizes that, in deciding a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pled allegations in the complaint. In reality, many of Plaintiff's allegations are untrue. The District prohibits and strongly opposes Badley's alleged conduct toward the Plaintiff. Should this lawsuit progress to a stage at which the District will be able to introduce evidence, the District expects to demonstrate that KISD personnel responded quickly and reasonably to the information they received about Badley.
>
> Defendant's Motion to Dismiss Plaintiff's First Amended Complaint and Brief
> 29908/717931-2

In its Motion to Dismiss, despite acknowledging in a footnote that the Court *must* accept as true all well-pled allegations in Plaintiff's live Complaint, Defendant argued (and continues to argue) that many of Plaintiff's allegations in her First Amended Complaint are untrue. Instead, Defendant affirmatively stated to the Court that Defendant's personnel responded "quickly and reasonably." As demonstrated by the deposition testimony in this case, however, it is Defendant's statement that is untrue.

Plaintiff attaches deposition testimony to Plaintiff's Motion for Reconsideration to demonstrate that Defendant did not accurately state in its Motion to Dismiss its actions and response involving Badley. Badley signed a resignation form on January 27, 2020, in which his last day of employment with Keller ISD would be March 6, 2020. Keller ISD wanted the Court to believe that its actions were timely and reasonable. They were not. The depositions further supported the allegations in Plaintiff's live Complaint.

- There were prior complaints by parents regarding Badley having "favorites" and also multiple instances of inappropriate language and cursing towards minor students. *See* Exhibit A to Plaintiff's Motion for Reconsideration, Deposition of Michelle Somerhalder, P. 43:4-7, 50:12-17, 51:11-14, 22-25.

- Principal Michelle Somerhalder specifically addressed and counseled Badley on concerns regarding him having "favorite" students almost four years prior to the events involving Doe. *Id.*, P. 56:13-23. Yet, when learning he admitted Doe was one of his "favorites" on **January 8, 2020**—nearly three weeks before his eventual resignation and in the timeframe of Doe's family reported a number of harassing/inappropriate letters that appeared to be connected to the District—Somerhalder did not even bother to call Badley in herself. *Id.*, P. 56:20-23, 62:20-2, 7-9.

- Following the 2016 complaints, Somerhalder admitted Badley did not receive any repercussion or discipline of any form, other than a letter in his file. P. 38:7-12. Further, following those complaints, no attempt was made by Defendant in *any way* to either scale back or limit Badley's access to students. *Id.*, P. 38:13-16.

- Somerhalder admitted that when she found out Badley was texting Doe, she knew it was not appropriate. *Id.*, P. 114:7-11. Somerhalder admitted she could not think of a single reason to justify a teacher texting a student over 600 times. *Id.*, P. 105:10-18. When asked whether she recalled the concern that Badley was driving by Doe's house, Somerhalder admitted Doe's parents had told her that. *Id.*, P. 18:10-14.

- Somerhalder admitted that she had the authority or ability to raise concern regarding a faculty member *and* that she believed Badley should no longer work for Defendant, yet she did not tell anyone he should be terminated. *Id.*, P. 24:5-16.

- Somerhalder also confirmed that in between January 8 and January 27, **there was *no* effort by Defendant to limit or restrict Badley's access to student databases or the ability to communicate with students such as Doe**, and *no* effort by Defendant to search Badley's computer or phone. *Id.*, P. 94:8-20. This is deliberate indifference.

At the very minimum, even by Defendant's own admissions, those are nearly three weeks in which Defendant did not restrict Badley from Doe's personal information and from Doe herself. Badley was allowed to continue to terrorize Plaintiff, including stalking her at her home and at her track meets.

Further, as stated in Plaintiff's Motion, Defendant's superintendent admitted that Badley's actions warranted termination. *See* Exhibit B to Plaintiff's Motion, Deposition of Rick Westfall, P. 23:20-24. Yet Westfall confirmed that Badley was employed until March 6, 2020—nearly two months after

```
1  what he coached.  But you have a teacher/coach that is
2  going by a student's house -- a minor student's house,
3  texting her 600 times.  Parents have come to you guys to
4  complain.  You've testified it warranted termination.
5  And at the end of the day, you let Mr. Badley submit a
6  resignation notice that put his -- that put his last day
7  of employment in March of 2020; is that right?
8           MS. O'LEARY:  Objection.  Form.
9       A.  Yes.
```

*Id.*, P. 40:1-9.

Defendant stated: "The District was not deliberately indifferent by taking action to remove Badley from the District as quickly as possible." *See* Dkt. 13. This was not an accurate representation to the Court. Further, Westfall equivocally confirmed that Defendant continued to pay Badley and that Badley was a member of the faculty until March 6, 2020. *See* Exhibit B to Plaintiff's Motion, Deposition of Rick Westfall, P. 40:10-16; 41:25-42:6. Importantly, however, Westfall conceded that Defendant exercises control over individuals on its faculty and staff. *Id.*, P. 43:3-12. **Yet, during that time period from January 2020 through March 2020, Westfall**

**admitted there was *no* effort made by Defendant to notify parents and/or students through any sort of internal communication, email blast, letter, mailing, or *anything* regarding Badley's need to be terminated**. *Id.*, P. 41:16-24. And again, despite admitting Defendant had the ability to limit a teacher or coach's access to a student or particular students, Westfall unequivocally conceded Defendant *never* informed the faculty, staff, parents, or students about Badley's actions that Defendant were aware of, and Defendant *never* sent out any alert regarding Badley not belonging at practices or on campus. *Id.*, P. 85:15-86:9.

Thus, Defendant's statements to this Court are lip service.  Defendant's own witnesses and higher-ups admitted that *Defendant* never even told faculty members, parents, or other students to be on the lookout for Badley on campus, at any point before the end of his employment in March 2020.  Tellingly, *Westfall admitted that he—as one of the decision-makers along with those present in the executive meetings—**was aware that if Defendant were not to not tell people about Badley, that no one would be on alert when seeing him following a student or students***. *P. 86:10-22. This is deliberate indifference by Keller ISD.*

Thus, Defendant's own Athletic Director indicated that Defendant's head of Human Resources Dr. Johnson never told him to inform the coaches, event coordinators, and any tournament hosts that if Badley showed up, he needed to be removed. *See* Exhibit D to Plaintiff's Motion for Reconsideration, Deposition of Eric Persyn, P. 59:16-22.  Persyn testified that had Dr. Johnson told him to let the coaches, event coordinators, and tournament hosts that if Badley showed up, he needed to be removed, that Persyn would have done so.  This allowed Badley to show up and stalk Doe at practices and events because in several instances, the coaches, coordinators and hosts were unaware Badley was not supposed to be there. Again, this is yet another example of Defendant's indifference. Simply put, Defendant was aware that Badley was

a danger and was stalking Doe, yet it did not instruct individuals that would have had the ability to identify and prevent Badley from entering said practices and events. **Again, importantly, Persyn admitted that had Dr. Johnson told him to inform others, that would have restricted Badley's access to those very meets.**

```
 4   Q.  (BY MR. DAO) Okay.  And if she had, you would
 5  have listened?
 6   A.  Yes, sir.
 7   Q.  And that probably would have make -- at least
 8  to some ability, restrict his access to those track
 9  meets, true?
10           MS. O'LEARY:  Objection.  Form.
11   A.  Yes, sir.
```

*Id.*, P. 60:4-11.

```
17   Q.   Did they send out a letter to parents and faculty
18  about Ricky Badley?
19   A.   No.
20   Q.   During the months that Badley continued to terrorize
21  Jane Doe, this letter, the panties on it, he was still an
22  employee of Keller ISD in February of 2020.  Is that accurate?
23        MS. O'LEARY:  Objection, form.
24        THE WITNESS:  Yes.
```

*See* Exhibit B, Excerpts from the Deposition of Tracy Johnson, P. 85:17-24. As numerous witnesses confirmed, Keller ISD never sent out any mass email or correspondence to parents warning them about Badley. Even after he "resigned" the last week of January 2020, Keller ISD kept Badley on as an employee until March 2020. Defendant stated numerous inaccurate

statements and representation to this Court. Because he was still an employee of Keller ISD and Keller ISD never warned any faculty members or parents about Badley, this allowed him to continue to terrorize Doe, including sending a letter with panties and a dildo inside of a school locker on campus after said "resignation." Tracy Johnson, the Chief Human Resources Officer for Keller ISD confirmed that Badley continued to terrorize Doe even in February 2020.

### D. Defendant asserts that the Court cannot go beyond the pleadings in analyzing the Motion to Dismiss, yet Defendant relies upon documents beyond the pleadings.

In Defendant's Response to Plaintiff's Motion for Reconsideration, in an attempt to discredit the deposition testimony attached by Plaintiff, Defendant states that the Court cannot "go beyond the pleadings in this manner in analyzing KISD's motion to dismiss." *See* Defendant's Response, at p. 6. Defendant further states: "To the contrary, a motion to dismiss under Rule 12(b)(6) is a challenge to the allegations in the complaint, not an evidentiary challenge." *Id.*, p. 6. Yet in its Response, Defendant itself attaches correspondence with Badley and the Texas Education Agency. Such is beyond the pleadings. This correspondence was also not referenced in, or attached to, Defendant's Motion to Dismiss. Plaintiff objects and such correspondence should be stricken. Importantly, even if the correspondence with Badley and the Texas Education Agency were to be considered, **Keller ISD never sent correspondence regarding Badley to the faculty, the parents, or the students at Keller ISD.** Further, a notable takeway from the letter is that Defendant admits that the communications between Badley and Doe are a "grooming technique of the teacher/coach," that Badley was found to be in violation of numerous Code of Ethics sections, and that Keller ISD's Human Resources determined that the communication was "not representative of a prudent educator." Yet Keller ISD continued to sweep under the rug the terrorizing Badley inflicted, allowing it to continue well past the resignation letter date in January 2020.

Finally, by submitting evidence in its Response, Defendant appears to acknowledge that reasonable minds can differ on what the evidence shows. This has raised several genuine issues of material fact. This case should have survived Defendant's Motion to Dismiss. However, due to several of Defendant's representations regarding its own actions (which, as demonstrated by the deposition testimony, are not entirely accurate), this Court relied upon such and has granted Defendant's Motion to Dismiss. This case should have made it to the summary judgment stage, at the very least.

## CONCLUSION

Plaintiff asks that this Court grant Plaintiff's Motion for Reconsideration, and to vacate or set aside its Order Granting Defendant's Motion to Dismiss. Plaintiff's First Amended Complaint includes sufficient allegations that raise a plausible right to relief. Further, as demonstrated by the depositions conducted in this case, not only are they allegations that raise a plausible right to relief, but there are genuine issues of material fact in this matter regarding Defendant's actions and response to allegations set forth by Plaintiff in the live Complaint. Plaintiff asks for any further relief to which she may be entitled.

Respectfully submitted,

*/s/ Michelle Simpson Tuegel*
THE SIMPSON TUEGEL LAW FIRM, PLLC
**MICHELLE SIMPSON TUEGEL**
Texas Bar No. 24075187
3301 Elm St.
Dallas, Texas 75226
(214) 774-9121
(214) 614-9218 (fax)
michelle@stfirm.com

**DALY & BLACK, P.C.**

*/s/ Andrew Dao*
Andrew Dao

Texas Bar No. 24082895
2211 Norfolk St., Ste. 800
Houston, Texas 77098
(713) 655-1405
(713) 655-1587 (fax)
adao@dalyblack.com
ecfs@dalyblack.com (service)

## **CERTIFICATE OF SERVICE**

I hereby certify that on **September 7, 2022,** the foregoing was filed with the clerk of the court, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of documents by electronic means.

*/s/ Andrew Dao*
Andrew Dao